UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| SHELA JONES,<br>        Plaintiff,<br><br>        v.<br><br>HUNG CAO, Acting Secretary of the<br>U.S. Navy,[1]<br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 22-cv-418-JJM-AEM |

## ORDER

Plaintiff Shela Jones brings two counts[2] of race-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 against her employer Defendant Hung Cao, Acting Secretary of the United States Navy.  ECF No. 1.  Before the Court is Acting Secretary Cao's ("the Navy") Motion for Summary Judgment as to both counts.  ECF No. 27.

## I.    FACTS

Ms. Jones is a 57-year-old, African American naval veteran now employed as a civilian by the United States Navy.  She was hired as a computer scientist in Code 80 in 2001.  During that time, Ms. Jones reported to Betty Jester, a branch head in Code 80.  In 2001, Ms. Jones filed a complaint with the Equal Employment

---

[1] Under Federal Rule of Civil Procedure 25(d), when a public officer named in an official-capacity lawsuit leaves office, their successor is automatically substituted as a party.  Here John C. Phelan resigned as Secretary of the Navy and on April 23, 2026 Hung Cao became Acting Secretary of the Navy.

[2] The parties reference a hostile work environment because of discrimination and retaliation, but Ms. Jones has not pled a separate count for hostile work environment.

Opportunity (EEO) department, alleging that Ms. Jester discriminated against her based on her race.

The following year, Ms. Jones was transferred to Code 25, where she worked as a computer scientist for two years while receiving her Ph.D.  There, Ms. Jones began reporting to David Abdow, branch head and project manager for the Shipboard Electronic Systems Evaluation Facilities Project (SESEF).  Ms. Jester worked directly with Mr. Abdow.  Mr. Abdow told Ms. Jones that he talked to Ms. Jester about her but did not say what the conversation was about.  Ms. Jones believes the conversation was about her 2001 EEO filing and contends that this knowledge influenced her future supervisors Charles Wesley and Lawrence Rainey to give negative supervisory evaluations.

Ms. Jones also experienced punitive employment actions there.  She was placed on a performance improvement plan, denied technical competency training, denied performance and learning points, and required to complete seventeen mandatory training courses in two days.  Ms. Jones also believed that her supervisors set her up to fail by imposing unrealistic expectations for her tasks on SESEF and continuously canceling project-related meetings without grounds to do so.  In addition, Ms. Jones alleges that Mr. Abdow and Mr. Rainey talked down to her, rolled their eyes at her, yelled at her aggressively and in an unprofessional manner, acted as if she never did anything right, and violated procedures and protocols in different aspects of her work. Before this timeframe in her career, Ms. Jones' previous branch head gave her positive reviews and evaluated her performance as a "Major Contributor."

In 2022, Ms. Jones filed a formal EEO complaint that included twenty-two total allegations across all events spanning from 2021 to 2022. Following an investigation, Ms. Jones filed this action under Title VII for race discrimination and retaliation. The Navy moves for summary judgment on both claims. ECF No. 27.

## II.    STANDARD OF REVIEW

A motion for summary judgment requires the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence would enable a reasonable factfinder to decide the issue in favor of either party." *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 377 (1st Cir. 2018). "A fact is 'material' if it 'has the capacity to change the outcome of the [factfinder's] determination.'" *Id.* (alteration in original) (quoting *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 29 (1st Cir. 2014)). In ruling on a motion for summary judgment, the Court must review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).

## III.    DISCUSSION

The Court will analyze both claims under the *McDonnell Douglas Corporation v. Green* burden-shifting framework. 411 U.S. 792 (1973). In general, for a claim to survive summary judgment under this scheme, a plaintiff "must first point to evidence making out a prima facie case." *Bhatti v. Tr. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011) (citing *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999)). If satisfied, "this evidence creates a presumption of discrimination that [the

3

defendant] may rebut by pointing to evidence of legitimate, non-discriminatory reasons for the challenged conduct." *Id.* A plaintiff may still prevail by pointing to evidence that shows the defendant's reasons were pretextual. *Id.*

The Court turns to the Navy's motion on Ms. Jones' two claims.

## A. Discrimination Count

"A prima facie case of discrimination requires the plaintiff to establish that she was a member of a protected class, that she was qualified for the job, that she suffered an adverse employment action, and that the adverse employment action transpired under circumstances giving rise to an inference of discrimination." *Ripoli v. Dep't of Hum. Servs., Off. of Veterans Servs.*, 123 F.4th 565, 571–72 (1st Cir. 2024) (citing *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 29 (1st Cir. 2019)).

### 1. Prima Facie Case

#### a. Protected class and qualification

Ms. Jones satisfies the first two elements. As an African American woman, she is a member of a protected class and as a Navy Veteran with a Ph.D., two MBAs, and Engineering level 3 certified, she is qualified for the position she held.

#### b. Adverse employment action

The third element of an adverse employment action is "one that affects employment or alters the conditions of the workplace." *Stratton v. Bentley Univ.*, 113 F.4th 25, 38 (1st Cir. 2024) (cleaned up). An adverse employment action "is any employment action, regardless of its severity, in which an employer's conduct leaves an employee (1) 'worse off' (2) with respect to the 'terms [or] conditions' of their

employment." *Walsh v. HNTB Corp.*, 169 F.4th 330, 339 (1st Cir. 2026) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024)). Ms. Jones argues[3] that she experienced an adverse employment action when she was placed on a Performance Development Plan ("PDP") and given an unjustifiably poor performance rating of "Contributor" after receiving a positive performance rating of "Major Contributor" from her previous supervisor, which ultimately resulted in her being denied additional compensation.

Although the First Circuit has held that placing an employee on a performance improvement plan ("PIP")[4] alone is generally not enough to qualify as an adverse employment action, *Walsh* clarifies that this inquiry is "fact-intensive" and "PIP-specific," and that the Court must examine specifics to ultimately determine whether the terms or conditions of employment were altered in some way. *Walsh*, 169 F.4th at 340-41. For example, where changes in employment as the result of being placed on a PIP were "'within the normal scope of [the plaintiff's] employment and thus did not adversely affect the terms and conditions of her employment,'" a PIP does not

---

[3] Ms. Jones also argues other "adverse employment actions" but the record does not support her arguments. She argues that her supervisor delayed her performance closeout review but every one of Mr. Wesley's other subordinates also did not receive a timely review due to the fact he was on military leave. ECF No. 28-8 ¶ 3. She argues that denial of training was an adverse act, but it is undisputed that Ms. Jones did not properly complete her requests for additional training, and that she had completed the training she was denied. ECF No. 28-20 at 3-5. Lastly, she argues that a timecard was not promptly approved but it is undisputed that the timecard showing eighty hours of work that she alleged was not approved had been approved during the relevant timeframe. ECF No. 31-17 at 231-232.

[4] The First Circuit refers to these employment tools as PIPs, but the concept is the same as the PDP that Ms. Jones received.

constitute an adverse employment action. *Id.* at 340 (quoting *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 471 (7th Cir. 2025)).

In *Walsh*, the PDP was presented as a corrective measure, included specific guidance for improvement, and did not affect her compensation, duties, or advancement opportunities. *Id.* at 341. Ms. Jones' PDP is distinguishable from the one in that case because her supervisors were unable to articulate a clear factual basis for the PDP, which was later deemed baseless and removed through arbitration. More importantly, Ms. Jones alleges that the PDP was punitive, put in place as a way to "micromanage" her, and resulted in the denial of "pay points" to which she was otherwise entitled and received after successfully arbitrating the issue. The Court finds that this loss of compensation constitutes "some harm" affecting the terms and conditions of Ms. Jones' employment during that timeframe. *Muldrow*, 601 U.S. at 347-48 (rejecting a requirement that a plaintiff show a "materially adverse" or "significant" harm and holding that a plaintiff only demonstrate "some harm" with respect to the terms, conditions, or privileges of employment). Thus, the Court finds that Ms. Jones' PDP was an adverse employment action.

### c.  *Inference of discrimination*

To satisfy the last element of the prima facie case, a plaintiff must show that the adverse employment action gave ride to an inference of racial discrimination. Viewing the facts in the light most flattering to Ms. Jones and drawing all reasonable inferences in her favor, the Court concludes that a reasonable factfinder could conclude that the Navy's treatment of her supports an inference of discrimination.

Ms. Jones points to a pattern of differential treatment, including that she was the only employee to ever be put on a PIP by these supervisors and the lack of diversity in the workplace, which clears the low bar at this stage and gives rise to an inference of discrimination.  Taken in the light most favorable to Ms. Jones, the Court finds that she successfully established a prima face case of racial discrimination.

### 2.  Legitimate, Non-discriminatory Reason

The burden now shifts to the Navy, who must show that a legitimate, non-discriminatory reason for taking the above adverse employment action against Ms. Jones.  It argues that the PDP was justified due to her documented performance issues, inability to complete tasks and assignments in a timely manner, and because her supervisors noticed timecard discrepancies on which they based her poor performance feedback.  Although Ms. Jones disagrees with her supervisors' performance ratings, this does not, on its own, prevent the conclusion that the Navy has stated legitimate, non-discriminatory reasons for the adverse employment action.

### 3.  Pretext

The Court finally considers whether Ms. Jones has presented any material facts creating a dispute about whether the Navy's justifications were pretextual and its actions were in fact "improperly motivated by discrimination." *Ray v. Ropes & Gray*, 799 F.3d 99, 113 (1st Cir. 2015) (quoting *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003)).  As evidence of pretext, Ms. Jones points to events where she believes she was being set up to fail, presumably due to her race.  She was forced to revise the Database Requirements Document (SESEF) into a format that a

different employee said was impossible, her supervisors gave her contradictory directives, and canceled meetings that prevented her from completing her work. She also raises incidents leading to a hostile work environment where her supervisors repeatedly yelled at her and treated her disrespectfully, denied her request to transfer, and reduced her performance ratings.

To show pretext, Ms. Jones must show that otherwise valid, race-neutral explanations for her supervisors' conduct could be "unworthy of credence" or "false." *Ripoli*, 123 F.4th at 575 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).[5] Based on the developed summary judgment record as a whole, however, none of this evidence raises a genuine issue of material fact as to whether the actual reason for the adverse employment action was based on racial animus. *See Ray*, 799 F.3d 99, 114 (holding that comparator evidence, the promotion of others based on "racial" characteristics, the subjective nature of the plaintiff's performance

---

[5] During the oral argument on this motion, the parties and the Court discussed the First Circuit's recent decision in *Ripoli*, on whether more evidence of discrimination–beyond what the plaintiff produced to get over the prima facie case hurdle–was required to prove pretext in the last stage of the *McDonnell Douglas* burden-shifting analysis of Ms. Jones' race discrimination claim. The Court appreciates the additional briefing the parties provided. *Ripoli* instructs that where "'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, … the trier of fact [may] conclude that the employer unlawfully discriminated.' And in that event, a plaintiff need not necessarily 'introduce additional, independent evidence of discrimination.'" *Ripoli*, 123 F.4th at 572 (citations omitted). So, a plaintiff who has shown pretext does not have to "provide additional evidence of discrimination beyond the prima face case" to defeat summary judgment. *Id.* at 575. As to the Court's analysis of Ms. Jones' discrimination claim, this statement of the law informs its consideration of the record evidence. In analyzing her claim, the Court has not required Ms. Jones to enter more evidence of discrimination beyond what she argues initially (though she expands it on her own) in deciding whether summary judgment is appropriate.

reviews, and the firm's weak record of advancing Black associates to partner did not raise a genuine issue of material fact that the plaintiff's dismissal was motivated by racial animus). And during Ms. Jones' deposition, she admits that the incidents she relies on to show pretext were not based on her race. *See* ECF No. 31-17, 78-79; 83-84; 98-102 (management setting unrealistic expectations for the SESEF project); *id.* at 50 (Mr. Abdow's cancellation of meetings about the project); *id.* at 134 (requests for information questioning her time spent on projects); *id.* at 105-06; 177-78 (yelling at her); *id.* at 75-76; 135-36 (timecard discrepancies and commitments); *id.* at 90-93 (performance reviews); and *id.* at 198-203 (disrespectful treatment and eye rolling).[6]

Ms. Jones now argues that, in hindsight, she believes her race played a role in this pattern of treatment. But sticking to the record, the only evidence of this belief is her own subjective and conclusory allegations and that is not enough in the face of a summary judgment motion. *See Ray*, 799 F.3d at 116-17; *Pilgrim v. Trs. of Tufts Coll.*, 118 F.3d 864, 871 (1st Cir. 1997) (affirming summary judgment for employer, noting plaintiff's perception that he had been discriminated against because he received "different" treatment, likely due to a clash of personalities, was not enough to withstand summary judgment.).

Additionally, it is not enough for a plaintiff "merely to impugn the veracity of the employer's justification; [s]he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up

---

[6] When asked about whether the eye rolling was based on race, Ms. Jones stated, "it could have been because of the simple fact that they were already agitated about me disagreeing." ECF No. 31-17, 203.

the employer's real motive of discrimination." *Theidon v. Harvard Univ.*, 948 F.3d 477, 497 (1st Cir. 2020) (quoting *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 446 (1st Cir. 2009)) (cleaned up). Whether summary judgment

> is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for [summary] judgment.

*Ripoli*, 123 F.4th at 575 (quoting *Reeves*, 530 U.S. at 148-49). Based on Ms. Jones' own testimony, the undisputed evidence in the record, and the Navy's legitimate, non-discriminatory reasons, a reasonable jury could not conclude that race was a motivating factor in the Navy's adverse employment decisions. Accordingly, the Court GRANTS Acting Secretary Cao's Motion for Summary Judgment as to Count I.

### B.    Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in protected activity. *Ray*, 799 F.3d at 107 (citing 42 U.S.C. § 2000e-3(a)). A retaliation claim also follows the *McDonnell Douglas* burden-shifting analysis. "To establish a prima facie case of retaliation, a plaintiff must prove that '(1) he or she engaged in protected activity under Title VII, (2) he or she suffered an adverse employment action, and (3) the adverse employment action was causally connected to the protected activity.'" *Id.* (quoting *Collazo v. Bristol–Myers Squibb Mfg., Inc.,* 617 F.3d 39, 46 (1st Cir. 2010)). Once the plaintiff meets these elements, the burden shifts to the defendant who must articulate a legitimate, non-retaliatory

10

reason for its conduct. *See Collazo*, 617 F.3d at 46. If satisfied, then the burden shifts back to the plaintiff to show that the defendant's given reason is a pretext for unlawful retaliation. *See id.*

### 1. Prima Facie Case

Here, Ms. Jones engaged in protected EEO activity and thus satisfies the first element of a prima facie retaliation claim. As the Court noted in its analysis of her discrimination claim, Ms. Jones also satisfies the second element because she has experienced adverse employment actions. To show causation, she points to the timing of her protected conduct and the employment actions as creating disputed issues for a jury to consider. The First Circuit has held that "'temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation.'" *Collazo*, 617 F.3d at 49 (quoting *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008)).

Ms. Jones filed her initial EEO report in June 2021, and her supervisor became aware of that activity in July 2021. Six months later, Ms. Jones was denied technical competency training, received only a "Contributor" rating resulting in loss of pay, and, the next month, was assigned the mandatory trainings. The record evidence supports this timeline of events and demonstrates disputed issues of fact that go further than just Ms. Jones' subjective belief that she was retaliated against. Because these actions occurred within a sufficiently close temporal proximity to Ms. Jones'

11

protected activity, that timing supports an inference of causation.[7]  The burden now shifts to Secretary Cao to articulate legitimate, non-retaliatory reasons for the challenged actions.

### 2.  Legitimate, Non-discriminatory Reason

The Navy contends that the employment actions taken against Ms. Jones were legitimate and non-retaliatory because they were in response to her documented work performance problems, not because of her EEO activity.  Therefore, as analyzed under her discrimination claim above, the record supports that the Navy's reasons appear to be legitimately made and the burden shifts back to Ms. Jones.

### 3.  Pretext

The final step of the *McDonnell Douglas* framework requires the plaintiff to prove that the defendant's reason for the adverse action was merely a pretext for retaliation.  To survive summary judgment, a plaintiff need not "prove by a preponderance of the additional evidence that [retaliation] was in fact the motive for the action taken."  *Collazo*, 617 F.3d at 50 (quoting *Dominguez-Cruz*, 202 F.3d at 433).  To defeat summary judgment, "[a]ll a plaintiff has to do is raise a genuine issue of fact as to whether [retaliation] motivated the adverse employment action." *Collazo*, 617 F.3d at 50 (quoting *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424,

---

[7] The Court does not consider Ms. Jones' placement on a PDP as evidence of her retaliation claim.  Although the PDP was formally imposed in July 2021, the record reflects that Ms. Jones was referred to the Performance Development Resource process in May 2021, before her protected EEO activity.  Accordingly, the PDP is not causally connected to Ms. Jones' protected conduct and thus cannot provide a basis for her retaliation claim.

12

433 (1st Cir. 2000)) (alteration in original). The Court concludes that there are disputes in the record on which a reasonable jury could infer that the Navy took adverse action against Ms. Jones in retaliation for her protected conduct.

First, as mentioned above, the close temporal proximity between her protected EEO conduct and her supervisors' subsequent behaviors and patterns including downgrading her performance (Sept. 2021), denying her technical training (Jan. 2022), denying her continuing learning points (Jan. 2022), and assigning her seventeen trainings (Feb. 2022) support an inference of retaliation. Moreover, Ms. Jones had expressed her concern about her supervisors' treatment of her many times and even requested a department transfer, which was frustrated when a supervisor conditioned the transfer, without good reason, on her completing her assigned work for him.

Therefore, viewing the summary judgment record in the light most favorable to Ms. Jones, the Court concludes that she has raised a genuine issue of fact as to whether the adverse actions taken against her were motivated by retaliatory animus. Based on the particularly close temporal connection between Ms. Jones' protected conduct and her supervisors' employment actions and the actions themselves, a reasonable jury could conclude that Ms. Jones was retaliated against because of her protected conduct. Accordingly, the Court DENIES Acting Secretary Cao's Motion for Summary Judgment as to Ms. Jones' Count II retaliation claim.

13

## IV.  CONCLUSION

For these reasons, the Court GRANTS IN PART AND DENIES IN PART Acting Secretary Hung Cao's Motion for Summary Judgment as follows: Count One Discrimination is DISMISSED; Count Two Retaliation survives.  ECF No. 27.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

June 9, 2026

14